**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GARRETT RECOVERY, LLC, assignee of GARRETT TECHNOLOGIES, INC.,<br><br>Petitioner,<br><br>v.<br><br>REACT HOLDINGS, INC.,<br><br>Respondent. | No. 26 CV 5267<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Petitioner Garrett Recovery, LLC entered into a Master Services Agreement with respondent React Holdings, Inc. The agreement provided that any dispute would be settled by arbitration. A dispute arose, the parties submitted the matter to arbitration, and the arbitrator awarded petitioner over $300,000. Petitioner filed the present petition to confirm the final arbitration award under 9 U.S.C. § 9. Respondent moves to vacate the arbitration award on the grounds that the arbitrator exceeded his powers in entering an award in favor of petitioner. For the reasons discussed below, the motion is denied.

## I. Legal Standards

The Federal Arbitration Act governs this case. "Judicial review of arbitration awards is tightly limited." *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020). An arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Kinsella*

*v. Baker Hughes Oilfield Operations, LLC*, 66 F.4th 1099, 1103 (7th Cir. 2023) (quoting 9 U.S.C. § 10(a)(4)). "Under § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013).

## II. Background

Respondent React Holdings, Inc. develops, produces, and sells medical devices. [3] at 30.[1] Petitioner Garrett Technologies, Inc. provides design and development services in the medical industry. [3] at 30. The parties were introduced to each other by a third party in the summer of 2022 when React was seeking to modify the design of its muscle therapy system. [3] at 30. In September 2022, the parties entered into a written contract setting forth the terms on which GTI was engaged to work for React. [3] at 30. These terms were set forth in a Master Services Agreement and a Statement of Work. [3] at 30.

The Statement of Work broke the project into four phases. [3] at 37. The Statement described a third document, the Gantt chart, as a "project management tool" that defined the scope of services, provided a schedule, and provided React with a projected estimate for how much the tasks would cost. [3] at 37. The Statement also "contained explicit language indicating the cost and schedule the Parties had set forth were estimated on a 'Time and Materials' basis and 'intended for budgetary guidance only.'" [3] at 38.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the arbitrator's award, attached to GTI's amended petition to confirm arbitration award, [3].

GTI worked on the project until June 2023, at which time React fell behind on paying invoices. [3] at 30. Eventually, payments stopped entirely and GTI initiated arbitration proceedings. [3] at 30. React answered the demand for arbitration and asserted a counterclaim. [3] at 30.

Pursuant to the arbitration clause, the parties submitted their evidence and arguments in written form. [3] at 31. The arbitrator applied Illinois law, as required by the clause and consistent with the parties' arguments. [3] at 31.

In his final award, the arbitrator issued findings of fact. [3] at 32–42. I assume familiarity with the award and do not repeat the findings here. An arbitrator's findings of fact are presumed correct. 29 U.S.C. § 1401(c).

According to the arbitrator, GTI sought recovery on two theories: breach of contract and account stated. [3] at 42. He recited the elements of these theories and concluded that GTI "met its burden of establishing React's liability and GTI's entitlement to recover" under both theories. [3] at 42–43. Specifically, he found that GTI established the existence of a valid and enforceable written contract, that GTI substantially performed its obligations under the contract, that React breached the contract, and that the breach resulted in damages to GTI. [3] at 43–44.[2]

With respect to React's counterclaim for breach of contract (namely, that GTI failed to meet a contractual obligation to complete various tasks by specific dates and at specific costs), the arbitrator determined that dates and prices in the Gantt chart

[2] Finding that GTI had established the elements of breach of contract, the arbitrator noted that the question of whether GTI should also prevail on a theory of account stated was moot. [3] at 45.

were not binding and enforceable. [3] at 46. The arbitrator agreed with GTI's observations that neither the Master Services Agreement nor the Statement of Work stated any binding deadlines for any deliverables. [3] at 46.

After addressing and rejecting each of React's affirmative defenses and counterclaims, the arbitrator considered the question of remedy. [3] at 53. The arbitrator determined that GTI sought "damages, interest, and legal fees." [3] at 53. Pursuant to the Partial Final Award, GTI submitted materials supporting its request for an award of interest, legal expenses, and arbitration costs. [3] at 53.

React argued that GTI was "not entitled to any award of attorneys' fees or the costs of arbitration because it did not request the same in its initial Demand for Arbitration." [3] at 53. Though true (that GTI did not check the boxes for "Attorneys' Fees" or "Arbitration Costs"), the arbitrator rejected this argument, noting that GTI had sufficiently requested these remedies in other submissions early in the case and that React had similarly sought these remedies. [3] at 54.

The Statement of Work stated that "Client" (meaning React) would pay for any reasonable legal fees and costs incurred in the collection of any unpaid balance. [3] at 55. The terms and conditions of the Master Services Agreement, however, supersede conflicting provisions in the Statement of Work. [3] at 56. Though the Agreement provides that the parties "shall bear the costs for the arbitration equally" and "each shall pay for its own legal fees and expenses," it further provides an exception "to the extent the arbitration award states that the expense shall be otherwise assessed." [3] at 56. Reading the exception to mean the two documents were not actually in conflict,

the arbitrator exercised his discretion to award GTI the legal fees and costs it incurred in prosecuting and defending the case. [3] at 56.

In support of its request for an award of attorneys' fees, GTI submitted an affidavit from Jennifer Kunetka, GTI's chief financial officer. Finding that Kunetka lacked personal knowledge of the amount of work performed by GTI's attorney, the arbitrator declined to award fees based on her calculation of the proportion of the fixed fee paid to the firm. [3] at 56–57. He did, however, award fees for the work performed by a paralegal, crediting Kunetka's statements that she had worked personally with the paralegal on the case and the time spent by the paralegal was detailed in the invoice attached to the affidavit. [3] at 57.

The arbitrator also awarded interest. He quoted the Illinois Interest Act, which states that creditors "shall be allowed to receive" interest on money due under any "bond, bill, promissory note, or other instrument of writing" or "on money due on the settlement of accounts." [3] at 54 (citing 815 ILCS 205/1). Either one of these provisions, according to the arbitrator, supported an award of interest in this case where React was indebted to GTI and the debt was "fixed, certain, and interest [was] readily subject to calculation." [3] at 55. Though the arbitrator agreed with React that the American Arbitration Association rules merely permit an award of interest, he explained that the Illinois Interest Act mandates an award of interest (and even if it did not, interest in this case was "justified as a matter of discretion"). [3] at 54 n.18.

## III. Analysis

React raises five theories for why the arbitrator's decision should be set aside. Each of these arguments were raised and rejected in the arbitration proceedings. Though the law is not so restricted as to preclude *any* judicial review (as suggested by GTI), the appropriate scope of review is limited. *Kinsella*, 66 F.4th at 1103. Only when the arbitrator's inquiry "disregarded the very language of the agreement itself" may his award be set aside. *USAA Savings Bank v. Goff*, 170 F.4th 1051, 1055 (7th Cir. 2026).

### A. The Gantt Chart

React first argues that the Final Award is based on a "fundamental misunderstanding of the parties' agreement." [9] at 5. Specifically, React contends that GTI breached the contract when it failed to provide deliverables as required by the Gantt chart, and that the arbitrator failed to scrutinize GTI's evidence of performance. [9] at 7–8. According to React, the arbitrator's award was contrary to the contract. [9] at 10.

But behaving "contrary" to the contract is different than failing to interpret it. *See, e.g.*, *Kinsella*, 66 F.4th at 1104. In other words, even if the arbitrator's findings were erroneous, they would not be subject to vacatur if he interpreted the contract in reaching his conclusion.

Here, the arbitrator interpreted the relevant contract provisions. He discussed the nature and relationship of the Master Services Agreement, the Statement of Work, and the Gantt chart before determining that the dates and prices set forth in

the Gantt chart did not constitute contractual obligations. [3] at 46. The arbitrator did not "disregard" the Gantt chart, as alleged by React, but rather interpreted in a way that was contrary to React's position. [15] at 3. This is not a ground for vacating the award.

Nor is React's assertion that GTI failed to produce evidence of performance. Several times in his opinion, the arbitrator cited evidence he believed supported GTI's submission of deliverables. *See, e.g.*, [3] at 39–40, 46–47. The arbitrator similarly considered and rejected React's argument that the descriptions of alleged work in the time records were suspect. [3] at 43. As explained by the arbitrator, React never suggested that GTI misreported the number of hours it spent on the project or failed to deliver monthly invoices. [3] at 43. Even if it had, the record supported GTI's position. [3] at 43.

React has provided no evidence suggesting that the arbitrator based his decision (or relevant factual findings) on considerations outside of the contract. The arbitrator's findings regarding the significance of the Gantt chart and the evidence of performance were interpretations of the contract. They are therefore consistent with the parties' agreement to submit their dispute to arbitration.

**B. Account Stated**

React also seeks vacatur on the ground that the arbitrator "entertained a non-existent account stated claim." Because GTI did not mention account stated during the arbitration proceedings until its reply brief, React argues that it did not have an

opportunity to respond to it. [15] at 7. React does not argue that claim should have been waived but instead attempts to rebut the theory on the merits. [15] at 7–8.

But whether the account stated claim was waived, meritless, or something else entirely is immaterial. The arbitrator explained that the theory became moot as soon as GTI had established the elements of breach of contract. [3] at 45. An account stated claim is "merely a form of proving damages for the breach of a promise to pay on a contract." *Dreyer Med. Clinic v. Corral*, 227 Ill.App.3d 221, 226 (1992). Because the damages were "straightforward" and based on the unpaid balance that resulted from the breach, the arbitrator's consideration of account stated was (at most) harmless. [3] at 53.

**C. Attorneys' Fees**

React next argues that GTI is not entitled to recover attorneys' fees for three reasons: (1) that GTI did not properly request fess; (2) that GTI's request was based on the wrong document; and (3) that GTI did not adequately support its fee request. [9] at 10–12.

React raised these same three arguments before the arbitrator, who considered and rejected them in turn. [3] at 56 ("React argues (a) that attorneys' fees were not requested in GTI's Arbitration Demand; (b) that they are prohibited by the Contract; and (c) that the request for fees was not properly supported."). With respect to the first argument, the arbitrator agreed that GTI had not checked the box for "Attorneys Fees" in its Demand for Arbitration form, but was satisfied that GTI made the request

early enough in the proceedings to prevent React from "credibly claim[ing]" that it was prejudiced from this initial failure. [3] at 54.

I agree. In addition to GTI requesting fees in it is initial memorandum and support of its claim, [14-5], React also made the same request in its own initial arbitration brief, [14-1]. React was not (nor does it argue that it was) prejudiced by GTI's failure to check the box on the AAA's Demand for Arbitration form.

With respect to React's argument that GTI's request contradicted the Master Services Agreement's provision that parties would pay their own legal fees, this is an issue of contract interpretation not suitable for review. Regardless of the accuracy of the arbitrator's finding, he considered the possibility of a conflict between the Master Services Agreement and Statement of Work, determined that none existed, and concluded that an award of fees was permissible and appropriate under the parties' contracts. [3] at 56. His evaluation here is conclusive.[3]

Finally, with respect to the amount of fees awarded, React faulted the arbitrator for inexplicably "split[ting] the difference" by declining to award fees for GTI's lawyer while granting fees for the lawyer's paralegal. [9] at 11. True, Kunetka herself did not provide legal services. But React has provided no support for the proposition that a non-lawyer cannot provide evidence relevant to the calculation of attorneys' fees. Further, Kunetka declared that, as chief financial officer at GTI, she

[3] I also agree with the arbitrator that even if the two documents were in conflict, the Master Services Agreement did not preclude a fee award. The clause, "except to the extent the arbitration award states that the expense shall be otherwise assessed," independently granted the arbitrator discretion to award attorneys' fees. [3] at 56.

was responsible for managing the payments of costs and fees for the lawsuit. [14-8] at 2. She also worked directly with the law firm's paralegal, and the time spent by the paralegal was detailed in the invoice attached to Kunetka's affidavit. [14-8] at 3.

Contrary to React's contention, Kunetka declared—and the arbitrator credited—that she had personal knowledge regarding the time spent by the paralegal. Kunetka's declaration is meaningfully different than that discussed in *Geary v. Telular Corp.*, 341 Ill.App.3d 694 (2003), which lacked "evidentiary facts to which the affiant is capable of testifying." To the contrary, React's cited case supports the arbitrator's analysis and what he viewed as the difference between Kunetka's statements about the lawyer's work (which were based on belief) and those about the paralegal's work (which were based on personal knowledge). [3] at 57. In any event, even "a serious error of law or fact" is insufficient to justify vacating an arbitrator's award. *Kinsella*, 66 F.4th at 1104.

**D. Arbitration Costs**

Like React's first two arguments for vacating the arbitrator's award for attorneys' fees, its arguments for why GTI is not entitled to arbitration costs are also meritless. [9] at 12–13. First, as explained above, GTI's failure to check the box for "Arbitration Costs" in the Demand for Arbitration form was not prejudicial. *See* [3] at 57 (rejecting this argument for the same reason it was rejected with respect to attorneys' fees). Second, as also explained above, the clause excepting the requirement that the parties bear the costs of arbitration equally "to the extent the arbitration award states that the expense shall be otherwise assessed" similarly

applies here. Further, the arbitrator's finding that the Master Services Agreement and Statement of Work could be read in conjunction to determine that GTI could recover costs constitutes an interpretation of the contracts and is thus conclusive. [3] at 57.

**E. Interest**

Finally, React argues that GTI is not entitled to interest. [9] at 13–15. Again, React does not argue that the arbitrator exceeded the scope of his duties but rather argues that he "got it wrong" when he found that the Illinois Interest Act mandated an award of interest. [9] at 14–15.

Specifically, React first contends that the Illinois Interest Act does not apply because it is directed toward lending relationships not present in the instant case. [9] at 14. React raised this same argument in the arbitration proceedings and the arbitrator rejected it on the ground that the Act applies "where one party is indebted to another and where the debt is fixed, certain, and interest is readily subject to calculation." [3] at 55. The arbitrator's conclusion represents an interpretation of the parties' contract (because he found that it constituted an instrument of writing) and is thus conclusive on this point. [3] at 55.[4]

React then argues that even if the statute applied, it does not mandate an award of prejudgment interest. [9] at 14. But the cases React cites to support this proposition do not arise in the context of money due under any "bond, bill, promissory

[4] The arbitrator's determination that the Illinois Interest Act applied to the parties' dispute can also be characterized as a finding of law, but one embedded in the arbitrator's interpretation of the parties' contract dispute and not susceptible to judicial vacatur.

note, or other instrument of writing" or "on the settlement of accounts." As the arbitrator clarified, "[t]he award here is ***not*** based on a finding of a 'vexatious and unreasonable' delay of payment," which was at issue in the cases cited by React. [3] at 55 n.19 (emphasis in original); [9] at 14 (citing *Grandview Dev. Co. v. Findley Enters., Inc.*, 46 Ill.App.3d 848 (1977); *Gen. Dynamics Corp. v. Zion State Bank & Tr. Co.*, 86 Ill.2d 135 (1981)). Indeed, in *Arneson v. Board of Trustees, McKendree College*, 210 Ill.App.3d 844 (1991), the court made clear that the plaintiff was not entitled to prejudgment interest because the award did not represent money owed on an "instrument of writing," and not merely because the defendant had a good-faith defense. As the Illinois Interest Act states—and the arbitrator explained—the use of "shall" in the Act implies that an award of interest is mandatory where the statute applies. [3] at 54. Again, even "a serious error of law" is insufficient to justify vacating an arbitrator's award and React has failed to establish that the arbitrator committed *any* error in his interpretation of the Illinois Interest Act. *Kinsella*, 66 F.4th at 1104.[5]

## IV. Conclusion

Respondent's motion to vacate the arbitration award, [9], is denied. Petitioner's amended petition to confirm arbitration award, [3], is granted. Enter judgment in

[5] Further, even if an award of interest were merely permissive, the arbitrator nevertheless stated that "the award of interest made here would be justified as a matter of discretion as well, for the reasons stated in this Final Award." [3] at 54 n.18.

favor of petitioner, confirming the arbitration award in the amount of $364,599.68 in favor of petitioner and against respondent. Terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: October 16, 2026